UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEFFREY HARRISON,

        Plaintiff,

v.

J. VANDERMOLIN et al.,

        Defendants.
_____/

Case No. 1:23-cv-764

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a prior Order, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 9.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Zang, Vanduesen, and Stevens. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Poulin, Vandermolin, and Mitteer: official capacity claims, Fourteenth Amendment due process and equal protection claims, and any intended claims for the violation of

federal and state criminal laws. Plaintiff's Eighth Amendment claims against Defendants Poulin, Vandermolin, and Mitteer in their individual capacities will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MCF officials and medical personnel: Registered Nurses J. Vandermolin, V. Poulin, and L. Mitteer; and Correctional Officers Unknown Zang, Unknown Vanduesen, and Unknown Stevens. (Compl., ECF No. 1, PageID.1, 2.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.2.)

In Plaintiff's complaint, he alleges that on June 18, 2022, at around 7:30 p.m., "Plaintiff began to feel ill due to experiencing bloating of the stomach/abdominal [area] with severe pain, constipation, nausea, chills, and vomiting." (*Id.*, PageID.3.) Plaintiff asked three other inmates to alert the housing unit officers to Plaintiff's situation. (*Id.*) Shortly thereafter, Defendant Zang came to Plaintiff's cell, and Plaintiff advised Defendant Zang "that his stomach was bloated and causing him severe abdominal pain like his appendix was going to burst, that he was nauseated, vomiting, and having chills, and needed to see a nurse." (*Id.*) "Defendant Zang told Plaintiff to hold tight while he inform[ed] Health Services of the matter." (*Id.*) Defendant Zang returned to Plaintiff's cell and advised Plaintiff that Zang had contacted Health Services. (*Id.*) Defendant Zang "was told by [Defendant] Poulin that another Registered Nurse[, Defendant] Vandermolin[,] at Brooks

2

Correctional Facility down the street was notified because [Defendant] Poulin . . . was leaving for the day."[1] (*Id.*)

Subsequently, Defendants Vanduesen and Stevens came to Plaintiff's cell to check on him. (*Id.*) Plaintiff informed them of his symptoms and advised them that he felt ill. (*Id.*) Thereafter, Defendant Zang returned to Plaintiff's cell and told Plaintiff that Defendant Vandermolin had "informed him over the telephone that she was not going to see Plaintiff, to send a Health Services kite about the matter, and that Health Services would see Plaintiff the next day." (*Id.*) Plaintiff states that "[n]o superior was contacted by Zang, Stevens, and Vanduesen." (*Id.*)

The next day, June 19, 2022, at around 6:30 a.m., Plaintiff informed non-party correctional officers Larsen and Caltagirone "that he was ill from [the] day before" and he described the above-listed symptoms. (*Id.*, PageID.4.) The non-party correctional officers contacted Health Services, and Plaintiff spoke to Defendant Mitteer over the phone about his symptoms. (*Id.*) After speaking with Defendant Mitteer on the phone, Plaintiff waited for approximately 2.5 hours in the dayroom, and during this time, Plaintiff "was throwing up." (*Id.*) Plaintiff was then taken to Health Services in a wheelchair, and Defendant Mitteer "diagnosed him and sent him to Mercy Hospital." (*Id.*)

At Mercy Hospital, Plaintiff was diagnosed with "'moderately severe acute appendicitis' and transferred to McLaren Hospital." (*Id.*) Plaintiff's "infected appendix" was then "surgically removed." (*Id.*) Plaintiff contends that the doctors at Mercy Hospital and McLaren Hospital told him that "he could have died if his appendix had burst[] and he was not treated on time due to waiting hours over night to be taken to the hospital." (*Id.*, PageID.5.)

---

[1] Plaintiff describes Defendant Vandermolin as working at both MCF and Brooks Correctional Facility. (Compl., ECF No. 1, PageID.2.)

3

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment, as well as his right to equal protection and right to due process under the Fourteenth Amendment. (*Id.*) Plaintiff also avers that Defendants "violated state and federal criminal laws." (*Id.* (citing 18 U.S.C. §§ 241, 242).) As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.6.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks injunctive and declaratory relief, as well as monetary damages. (Compl., ECF No. 1, PageID.6.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or

practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96.

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur to him again.[2] In fact, Plaintiff complains about events that occurred almost two years ago. Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

### B.     Eighth Amendment Claims

Plaintiff claims that Defendants violated his Eighth Amendment rights as related to his receipt of medical care for appendicitis. (Compl., ECF No. 1, PageID.5.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately

---

[2] Plaintiff states that he seeks "[a] preliminary and permanent injunction ordering all defendants to cease delaying prisoners['] medical treatment"; however, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978); *cf. Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)). Nothing in the complaint suggests that Defendants continue to delay Plaintiff's medical care, and as such, Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, the injunctive relief that Plaintiff requests is not available to him.

indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of

8

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

### 1. Objective Component

Here, Plaintiff alleges that he experienced "bloating of the stomach/abdominal [area] with severe pain, constipation, nausea, chills, and vomiting," and that ultimately, he was diagnosed with "moderately severe acute appendicitis" and had surgery to remove his appendix. (Compl., ECF

9

No. 1, PageID.3.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has alleged sufficient facts to show a serious medical condition.

### 2. Subjective Component

#### a. Defendants Zang, Vanduesen, and Stevens

As to Defendants Zang, Vanduesen, and Stevens, Plaintiff alleges that after he began to feel ill on June 18, 2022, three other inmates went to alert the housing unit officers, and shortly thereafter, Defendant Zang came to Plaintiff's cell. (*Id.*) Plaintiff described his symptoms to Defendant Zang, and Zang then contacted Health Services. (*Id.*) Defendant Poulin told Defendant Zang that a nurse at Brooks Correctional Facility (Defendant Vandermolin) was notified of the issue. (*Id.*) Subsequently, Defendants Vanduesen and Stevens came to Plaintiff's cell to check on him, and Plaintiff informed them of his symptoms and advised them that he felt ill. (*Id.*) Defendant Zang then returned to Plaintiff's cell and told Plaintiff that Defendant Vandermolin had "informed him over the telephone that she was not going to see Plaintiff, to send a Health Services kite about the matter, and that Health Services would see Plaintiff the next day." (*Id.*)

Although Plaintiff faults Defendants Zang, Vanduesen, and Stevens for failing to contact a supervisor after being informed that Health Services would not see Plaintiff that night, administrative or custody officials, such as Defendants Zang, Vanduesen, and Stevens, who have no training or authority to supervise healthcare officials are entitled to rely on medical provider's judgment and cannot be held liable for healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006

10

WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).

Under these circumstances, the facts alleged by Plaintiff do not support an inference that Defendants Zang, Vanduesen, and Stevens, all of whom Plaintiff identifies as correctional officers, acted with deliberate indifference. At most, Plaintiff's allegations may suggest that the correctional officer Defendants acted negligently on June 18, 2022, but an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.

Accordingly, for the reasons set forth above, Plaintiff fails to state an Eighth Amendment deliberate indifference claim against Defendants Zang, Vanduesen, and Stevens.

### b.     Defendants Poulin, Vandermolin, and Mitteer

Plaintiff alleges that on June 18, 2022, Defendant Zang first spoke with Defendant Poulin when Zang contacted Health Services. (Compl., ECF No. 1, PageID.3.) Defendant Poulin informed Zang "that another Registered Nurse[, Defendant] Vandermolin[,] at Brooks Correctional Facility down the street was notified because [Defendant] Poulin . . . was leaving for the day." (*Id.*) Thereafter, Defendant Vandermolin "informed [Zang] over the telephone that she was not going to see Plaintiff, to send a Health Services kite about the matter, and that Health Services would see Plaintiff the next day." (*Id.*) The following day, June 19, 2022, Plaintiff alleges that he spoke to Defendant Mitteer over the phone about his symptoms, which included "severe" stomach pain and bloating, nausea, vomiting, and chills. (*Id.*) After speaking with Defendant Mitteer on the phone, Plaintiff waited for approximately 2.5 hours to be evaluated in person, and during that time, he continued to vomit. (*Id.*)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Here, Plaintiff alleges that despite learning of his symptoms, the medical Defendants did not perform any evaluation or provide any medical care (Defendants

11

Poulin and Vandermolin), or delayed the evaluation (Defendant Mitteer). Under these circumstances, although Plaintiff has by no means proven his Eighth Amendment claims against Defendants Poulin, Vandermolin, and Mitteer, the Court will not dismiss these claims on initial review. *See, e.g.*, *Blackmore*, 390 F.3d at 899 (discussing potential deliberate indifference when an inmate, who had appendicitis, did not receive any medical attention for "over fifty hours," and "Defendants knew the nature and duration of Plaintiff's abdominal pain, [and] they had reason to believe that Plaintiff required medical attention" (citation omitted)); *cf. Sherrod v. Lingle*, 223 F.3d 605, 611–12 (7th Cir. 2000) (discussing that "a prisoner is not required to show that he was literally ignored by the staff," and "[i]f knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell" that may constitute deliberate indifference).

**C.     Fourteenth Amendment Claims**

**1.     Due Process Clause**

When setting forth his claims, Plaintiff contends that by delaying his medical care, Defendants violated his due process rights. (*See* Compl., ECF No. 1, PageID.5.)

To the extent that Plaintiff intended to bring a procedural due process claim, Plaintiff fails to state such a claim. To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Here, Plaintiff's right to receive medical care is not the type of protection afforded by procedural due process. *See DeShaney v. Winebago Cnty. Dept. of Soc. Servs.*, 489

12

U.S. 189 (1989). Instead, the Sixth Circuit has recognized that, to the extent the right to medical care is a due process right, it is "a substantive due process right . . . ." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022).

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's right to receive medical care. *See supra* Section II.B. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim will be dismissed.

13

Accordingly, for all of the reasons set forth above, any intended procedural and substantive due process claims will be dismissed.

### 2. Equal Protection Clause

Plaintiff also alleges that Defendants violated his right to equal protection when they delayed his receipt of medical care. (*See* Compl., ECF No. 1, PageID.5.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court

would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### D. Violation of Criminal Laws

Plaintiff claims that Defendants "violated state and federal criminal laws"; however, Plaintiff only cites two federal criminal statutes (18 U.S.C. §§ 241 and 242) and does not identify any state criminal laws that he believes were violated. (Compl., ECF No. 1, PageID.5.)

Federal criminal statutes do not confer rights on private citizens. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (holding that "the district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes" (citation omitted)); *Am. Post Workers Union, AFL-CIO v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions."). Further, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)

Accordingly, any intended § 1983 claims for the violation of federal and state criminal laws will be dismissed.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Zang, Vanduesen, and Stevens will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Poulin, Vandermolin, and

Mitteer: official capacity claims, Fourteenth Amendment due process and equal protection claims, and any intended claims for the violation of federal and state criminal laws. Plaintiff's Eighth Amendment claims against Defendants Poulin, Vandermolin, and Mitteer in their individual capacities remain in the case.

    An order consistent with this opinion will be entered.

Dated:    May 31, 2024                           /s/ Robert J. Jonker
                                                                        Robert J. Jonker
                                                                        United States District Judge