UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY HARRISON #220488,

               Plaintiff,                         Hon. Robert J. Jonker

v.                                            Case No. 1:23-cv-764

JAMIE VANDERMOLIN, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 28.) Plaintiff has filed a response (ECF No. 32), but Defendants did not reply. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **granted** and that Plaintiff's remaining claims be **dismissed without prejudice**.

### I.  Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF), filed a complaint pursuant to 42 U.S.C. § 1983 on July 18, 2023, against Defendants Jamie VanderMolin, Vera Poulin, Laura Mitteer, Unknown Zang, Unknown Vanduesen, and Unknown Stevens based on events that occurred at MCF. Following initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c), Plaintiff's remaining claims are his Eighth Amendment claims against Defendants Zang, Vanduesen, and Stevens. (ECF Nos. 17 and 18.)

Plaintiff alleges that on June 18, 2022, around 7:30 p.m., he began to feel ill due to symptoms of bloating of the stomach/abdomen with severe pain, constipation, nausea, chills, and

vomiting. (ECF No. 1 at PageID.3.) At Plaintiff's request, three other prisoners alerted housing unit officers to Plaintiff's situation. Shortly thereafter, Corrections Officer (CO) Zang arrived at Plaintiff's cell, and Plaintiff advised him of his symptoms. (*Id.*) CO Zang told Plaintiff that he would inform healthcare of the situation. When CO Zang returned, he told Plaintiff that he had contacted healthcare and was told by Defendant Poulin that she had notified another nurse, Defendant VanderMolin at Brooks Correctional Facility down the street, about the situation because Defendant Poulin was leaving for the day. (*Id.*)

Subsequently, COs Vanduesen and Stevens came to Plaintiff's cell to check on him, and Plaintiff informed them of his symptoms and advised them that he felt ill. Shortly thereafter, CO Zang returned to Plaintiff's cell and told Plaintiff that Defendant VanderMolin had informed him over the telephone that she was not going to see Plaintiff that evening. VanderMolin told CO Zang that Plaintiff should send healthcare a kite about the matter, and they would see him the next day. (*Id.*) The next day, at around 6:30 a.m., Plaintiff informed COs Larsen and Caltagirone that he was ill from the day before and described his symptoms. The officers contacted healthcare and had Plaintiff speak with Defendant Mitteer about his symptoms. (*Id.* at PageID.4.) After the phone call, Plaintiff waited approximately 2.5 hours in the dayroom, during which time he "was throwing up." (*Id.*) Plaintiff was then taken to healthcare in a wheelchair. Defendant Mitteer examined Plaintiff and sent him to Mercy Hospital, where he was diagnosed with "'moderately severe acute appendicitis.'" (*Id.*) Plaintiff was then transferred to McLaren Hospital, where "his infected appendix was surgically removed." (*Id.*)

Defendants seek summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies before filing his complaint in this action.

## II.   Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.  Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants submit a Step III Grievance Report dated August 16, 2023, which shows the grievances arising out of MCF during the period of time at issue that Plaintiff exhausted through Step III. (ECF No. 29-3.) Defendants note that the report shows that prior to the time Plaintiff filed his complaint, he had exhausted one relevant grievance, Grievance No. MCF-22-06-0726-28I (the 0726 Grievance) through Step III. (*Id.* at PageID.158.) Defendants contend that the 0726 Grievance fails to satisfy the exhaustion requirement, not only because it did not name Defendant Mitteer, but also because it was rejected at Step I, and the rejection was upheld through Steps II and III. Specifically, the grievance was rejected because Plaintiff failed to attempt to resolve the issue with staff prior to filing the Step I grievance. (*Id.* at PageID.154–60.)

Plaintiff responds that he properly exhausted his claims by complying with the attempt-to-resolve requirement because he requested emergency medical care from Defendants through his unit officers pursuant to Policy Directive 03.04.100. He further contends that he included enough information in his grievance to allow the respondent to identify Defendant Mitteer. (ECF No. 32-1 at PageID.179–80.)

Assuming that Plaintiff sufficiently identified Defendant Mitteer in his Step I grievance, his claims against Defendants VanderMolin, Poulin, and Mitteer are nonetheless subject to

dismissal without prejudice because Plaintiff failed to properly exhaust his claims. A prisoner who does not try to resolve the issue with the staff member(s) involved before filing a grievance has failed to exhaust his administrative remedies. *See Lyles v. Papendick*, No. 19-10673, 2020 WL 6390494, at *8 (E.D. Mich. May 8, 2020), *report and recommendation adopted*, 2020 WL 5557649 (E.D. Mich. Sept. 17, 2020); *Spearman v. Gerth*, No. 2:15-cv-15, 2016 WL 4136538, at *3 (W.D. Mich. Aug. 4, 2016). Plaintiff's contention that his request for emergency medical care through his housing unit officers satisfied his obligation to attempt to resolve the issue with staff prior to filing a grievance miscomprehends that attempt-to-resolve requirement. Denial of medical care was the issue that Plaintiff grieved, and he was required to attempt to resolve that issue with the involved staff. At the time Plaintiff's housing unit officers requested medical care for him, there was no "issue" to resolve because Plaintiff had not been denied medical care. The issue arose only after Defendants denied the requests for medical care. Because Plaintiff did nothing to resolve the issue *after* he was denied medical care, the grievance was properly rejected for failure to attempt to resolve the issue with staff.

Accordingly, Defendants have met their summary judgment burden of demonstrating that Plaintiff failed to exhaust his available remedies.

### IV.   Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion (ECF No. 28), **dismiss** Plaintiff's remaining claims **without prejudice**, and close the case.

Dated: September 23, 2024                             /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).