UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY HARRISON,

    Plaintiff,

v.

JAMIE VANDERMOLIN, et al.,

    Defendants.

_____/

Case No. 1:23-cv-764

HON. ROBERT J. JONKER

## ORDER APPROVING AND ADOPTING IN PART AND REJECTING IN PART  REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Berens's Report and Recommendation, (ECF No. 36), and Plaintiff's Amended Objections to the Report and Recommendation, (ECF No. 41). Under the Federal Rules of Civil Procedure, where—as here—a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on *de novo* reconsideration, he or she finds it justified." 12 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3070.2 (3d ed. June 2024 update). Specifically, the Rules provide that:

> The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). *De novo* review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co., Inc.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Court has reviewed *de novo* the claims and evidence presented to the Magistrate Judge; the Report and Recommendation itself; and Plaintiff's amended objections. The Magistrate Judge recommends that the Court grant Defendants' motion for summary judgment as to all three of the remaining defendants. For the reasons explained below, the Court agrees that summary judgment is appropriate as to Defendant Mitteer. However, the Court discerns genuine issues of material fact precluding summary judgment as to Defendants VanderMolin and Poulin. Accordingly, the Court respectfully disagrees with this portion of the Magistrate Judge's recommendation.

## BACKGROUND

Plaintiff says that he began experiencing bloating and severe pain in his stomach/abdominal area, constipation, nausea, chills, and vomiting in the evening hours of June 18, 2022. (ECF No. 1, PageID.3). Plaintiff repeatedly reported his symptoms to the corrections officers in his housing unit, who in turn notified Defendants VanderMolin and Poulin. But Defendants VanderMolin and Poulin did not provide Plaintiff with medical care. (*Id.*) Instead, they told the corrections officers to have Plaintiff submit a kite (an internal form of communication between prisoners and staff members) to Health Services. The next morning, Plaintiff again spoke with housing unit staff about his symptoms, reporting that his symptoms had worsened. Plaintiff was permitted to speak to Defendant Mitteer about his symptoms over the phone. (*Id.*) Approximately two-and-a-half hours later, Plaintiff says that Mitteer performed an in-person examination and sent Plaintiff to the hospital. Plaintiff was ultimately diagnosed with "moderately severe acute appendicitis" and transferred to another hospital for treatment. (*Id.*) Per this Court's

May 31, 2024, screening opinion, Plaintiff's remaining claims concern Defendants' alleged deliberate indifference to his serious medical needs on June 18, 2022, and June 19, 2022. (ECF No. 17, PageID.69-70, 74).

## DISCUSSION

The parties agree that Plaintiff submitted and subsequently appealed a grievance against Defendants VanderMolin and Poulin through Step III of the Michigan Department of Corrections (MDOC) grievance policy. But that grievance was rejected based on Plaintiff's failure to attempt informal resolution with the relevant staff. In his objections, Plaintiff argues that the Magistrate Judge erred in determining that the grievance was properly rejected, leaving his claims unexhausted. (ECF No. 41, PageID.241).

On June 22, 2022, Plaintiff filed a grievance "against Health Care Professionals Poulin (RN) of MCF and Vandermolen (RN) at Brooks facility for denying [Plaintiff] emergency medical attention that could have resulted in death in [his] sleep." (ECF No. 29-3, PageID.158). In the section of the grievance form asking what the grievant did to resolve the issue prior to authoring the grievance, Plaintiff explained that he had three different officers contact VanderMolin and Poulin to report his symptoms—Defendants VanderMolin and Poulin nevertheless refused Plaintiff medical attention. (*Id.*)

In her Report and Recommendation, the Magistrate Judge referred to the MDOC grievance policy in effect at the time of the alleged deliberate indifference, which required prisoners to attempt to resolve grievable issues "**with the staff member[s] involved**" before filing their grievance. (ECF No. 36, PageID.222 (emphasis added) (citing MDOC Policy Directive 03.02.130 (effective 03/18/2019))). Because Plaintiff's communications with the corrections staff did not constitute an effort to resolve the issue (deliberate indifference to serious medical needs) with the

individuals involved (Defendants VanderMolin and Poulin), the Magistrate Judge determined that the relevant grievance was properly rejected.

But while the Magistrate Judge was correct in noting that Plaintiff's efforts to resolve his issues were made indirectly through corrections staff, the provision regarding informal resolution states in its entirety that:

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, **unless prevented by circumstances beyond his/her control** or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

MDOC Policy Directive 03.02.130 ¶ Q (emphasis added).

When Plaintiff's claims against Defendants VanderMolin and Poulin arose on June 18, 2022, Plaintiff was suffering from acute appendicitis. The next day, Plaintiff was hospitalized and then transferred for an appendectomy. In the Court's view, a reasonable fact-finder could determine that circumstances beyond Plaintiff's control, namely his illness and hospitalization, prevented Plaintiff from pursuing informal resolution directly with Defendants VanderMolin and Poulin within the allotted time. *Cf. Wagle v. Corizon*, No. 19-13787, 2022 WL 988371, at *3 (E.D. Mich. Mar. 31, 2022) (affirming the magistrate judge's determination that the plaintiff's hospitalization excused the plaintiff from seeking informal resolution under MDOC procedure). As such, a reasonable fact-finder could determine that Plaintiff made adequate, affirmative efforts to exhaust his claims against VanderMolin and Poulin and that his grievance was improperly rejected.

But the Court does not reach the same conclusion with respect to Defendant Mitteer. In his objections, Plaintiff argues that he "included enough information in his grievance to allow the

respondent to identify Defendant Mitteer." (ECF No. 41, PageID.244).  As such, Plaintiff contends that his grievance exhausted his claims against all three of the defendants.   The Magistrate Judge assumed without finding that Plaintiff's grievance included claims against each defendant without expressly so finding.  (ECF No. 36, PageID.224).  In fact, Plaintiff never complained in his grievance about Defendant Mitteer, and so he plainly did not exhaust any grievance against her. Nor does it seem he would have an legitimate complaint to exhaust because she was the nurse who examined him and sent him to the hospital.

The relevant grievance began: "This grievance is written against Health Care Professionals Poulin (RN) of MCF and Vandermolen (RN) at Brooks Facility for denying me emergency medical attention that could have resulted in death in my sleep."  (ECF No. 29-3, PageID.158). Plaintiff then laid out the circumstances of June 18, 2022, when he began experiencing symptoms and reporting those symptoms to Health Services to no avail.  Plaintiff went on to explain that in the morning hours of June 19, 2022, he again complained about his symptoms, and his fear that his appendix was going to burst.  (*Id.*, PageID.159).  Plaintiff reported that this time, he was permitted to speak directly with one "nurse Metildo," who proceeded to call him to Health Services, examine him, and send him to the hospital.  The grievance concludes: "RN Poulin and Vandermolen both denied me emergency medical treatment . . . . Their actions constituted deliberate indifference in violation of the cruel an[d] unusual punishment clause of the Eighth Amendment of the United States Constitution."  (*Id.*)

Plaintiff argues that he sufficiently identified Defendant Mitteer in his grievance by referring to "nurse Metildo" and describing the circumstances of their interaction.  But the problem with Plaintiff's grievance is not a matter of personal identification.  Even had Plaintiff's grievance

read "Mitteer" instead of "Metildo," it would not have exhausted a deliberate indifference claim against Mitteer.

Proper exhaustion "provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006); *see also Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) ("If a district court determines that prison officials have not been given fair notice of the claim being litigated against a defendant, the court will dismiss the claim against that defendant for failure to exhaust."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Plaintiff's grievance did not provide the MDOC with notice of, or the opportunity to address, deliberate indifference on the part of Defendant Mitteer. To the contrary, Plaintiff's grievance indicated that Mitteer provided Plaintiff with the necessary medical care. Plaintiff suggests as much within his objections, stating that "Defendant Mitteer is the only person who complied with the requirements [of MDOC policy]." (ECF No. 41, PageID.243). Accordingly, the Court finds that the relevant grievance did not and could not exhaust any claims against Defendant Mitteer.

As a final matter, the Court addresses Plaintiff's argument that he was not required to exhaust the grievance process because the Step II respondent to his grievance appeal utilized the term "non-grievable."[1] (ECF No. 41, PageID.246). It is well-established that prisoners are not required to pursue non-grievable issues through the grievance process prior to filing suit. *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004). Furthermore:

> Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure.[2] As the well-known proverb states, they cannot have their cake and eat it too.

---

[1]    Plaintiff did not present this argument to the Magistrate Judge.
[2]    Of course, if there was an alternative administrative procedure available to the prisoner with respect to his claims, defendants may still argue that the prisoner failed to exhaust that procedure.

*Reeves v. Hobbs*, No. 11-6047, 2013 WL 5462147, at *6 (W.D. Ark. Sept. 30, 2013), *aff'd sub nom. Reeves v. King*, 774 F.3d 430 (8th Cir. 2014).  But although the Step II response to Plaintiff's grievance was inarguably sloppy, and although it did contain the term "non-grievable," it did not truly advise Plaintiff that the grievance process was unavailable to him.  Instead, the Step II respondent rejected Plaintiff's grievance because (1) Plaintiff failed to attempt informal resolution of his grievance, (2) Plaintiff's grievance involved multiple issues, and (3) Plaintiff's complaint failed to reference/rely on a specific policy directive. (ECF No. 29-3, PageID.157).  Each of the justifications in the Step II response were dubious.[3]  But no reasonable fact-finder could find that the Step II response released Plaintiff from his statutory obligation to affirmatively pursue the exhaustion of his deliberate indifference claim against Defendant Mitteer.

## CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 36) is approved and adopted in part, and rejected in part as the Opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 28) is **GRANTED** as to Defendant Mitteer and **DENIED** as to Defendants VanderMolin and Poulin.

---

[3] At the time, MDOC Policy Directive 03.02.130 ¶ J(1) prohibited grievances that contained "multiple unrelated issues" not merely multiple issues.  Furthermore, there is no logical reading of the policy directive that leads to the conclusion that a prisoner must identify a particular policy directive within his Step I grievance; the grievance process was created to provide an "effective method of seeking redress for alleged violations of policy and procedure **or** unsatisfactory conditions of confinement." MDOC Policy Directive 03.02.130.  Unsatisfactory conditions such as, say, inadequate medical care.

**IT IS FURTHER ORDERED** that Defendant Mitteer is **DISMISSED** as a defendant in this case.

Dated:  October 29, 2024             /s/ Robert J. Jonker
                                                     ROBERT J. JONKER
                                                     UNITED STATES DISTRICT JUDGE